IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:14-cv-01449-JCH |
| PLEASANT GREEN MISSIONARY BAPTIST CHURCH, | ) ) ) | |
| Defendant. | ) ) | |

## CHURCH MUTUAL'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff/Counterclaim-Defendant, Church Mutual Insurance Company ("Church Mutual"), by and through undersigned counsel, pursuant to Fed.R.Civ.P. 56 and Local Rule 7-4.01, and for its Memorandum in Support of its Motion for Summary Judgment, states as follows:

### INTRODUCTION

Pleasant Green Missionary Baptist Church ("Pleasant Green") owns a building located at 1226 Rev. G. H. Pruitt Place, St. Louis, MO 63113 ("Building"). Statement of Uncontroverted Facts ("SOF")#1. Pleasant Green had a policy of insurance with Church Mutual, Policy Number: 0041713-02-511213, that was renewed on September 17, 2012 ("Policy"). SOF#2. On December 6, 2012, Church Mutual sent a cancellation notice to Pleasant Green for failing to pay the premium. SOF#4. The notice provided Pleasant Green until December 21, 2012 to make a payment for $2,049.23 to avoid cancellation. SOF#4. On December 27, 2012, after having not received a payment for the outstanding balance due, Church Mutual sent a billing statement to Pleasant Green, showing that the Policy was cancelled on December 21, 2012, and requesting

$342.84 as an earned premium ($220.84 after the application of a credit applied to Pleasant Green).  SOF#5.  On January 22, 2013, Church Mutual received a check from Pleasant Green for the earned premium.  SOF#6.  On January 29, 2013, Church Mutual sent a letter to Pleasant Green acknowledging Pleasant Green's payment of the earned premium and confirming the cancellation of the Policy.  SOF#7.

Pleasant Green claimed that on or about April 17, 2013, the Building sanctuary experienced a ceiling failure.  SOF#9.  Carlton Wicker, on behalf of Pleasant Green, contacted Church Mutual regarding the failure of the ceiling.  SOF#10.  Church Mutual advised Carlton Wicker that the Policy had been cancelled in December 2012.  SOF#11.  At Pleasant Green's request, Mr. Snorton reviewed the documents and contacted Church Mutual's accounting department.  SOF#12.  Mr. Snorton forwarded the cancellation letters to Mr. Wicker and Mr. Wicker confirmed that Church Mutual had cancelled the Policy due to Pleasant Green's failure to pay its premium.  SOF#13.  On April 23, 2013, Barry Taylor, on behalf of Pleasant Green, sent Church Mutual a letter requesting that the Policy be reinstated back to January 2013.  SOF#15.  On May 2, 2013, Church Mutual denied Pleasant Green's request for reinstatement.  SOF#16.  On May 15, 2013, Mr. Snorton prepared a proposal to issue Pleasant Green a new insurance policy.  SOF#18.  During the drafting of the proposal, Pleasant Green informed Church Mutual that it inspected the roofs and found no roof damage.  SOF#17.

On August 7, 2013, Pleasant Green filed a Complaint with the Department of Insurance, claiming that the Policy was unjustifiably cancelled.  SOF#21.  On September 27, 2013, the Department of Insurance found no wrongdoing by Church Mutual and that it had no basis to continue its investigation into Pleasant Green's Complaint.  SOF#23.

Knowing that the Policy was not reinstated, Pleasant Green then made a claim on November 20, 2013 alleging a date of loss in April 2012, before the policy was cancelled. SOF#26.  On November 20, 2013, Church Mutual sent out an acknowledgment letter and contacted independent adjuster, Nixon & Company ("Nixon").  SOF#27.  On November 21, 2013, Nixon contacted Pleasant Green to schedule an inspection.  SOF#29.  Jeff Greive with Nixon inspected the Building on December 12, 2013 and noted minimal weather related damage. SOF#34.  Pleasant Green provided Church Mutual a damage estimate for over $2,000,000 purportedly related to an alleged April 2012 hailstorm.  SOF#36.  Church Mutual hired engineer Brian Wehmeier with SEA, Ltd. to inspect the roof.  SOF#41.  Numerous inspections were set during January 2014, but could not be accomplished due to inclement weather.  SOF#42.

On February 6, 2014, Church Mutual sent Pleasant Green a reservation of rights letter. SOF#44.  On February 11, 2014, Church Mutual emailed Pleasant Green's public adjuster, informing him that the inspection has been delayed due to inclement weather.  SOF#45.  On February 18 and February 19, 2014, Mr. Greive and Mr. Wehmeier conduct an inspection of the Building.  SOF#46.  A follow up inspection was conducted on March 13, 2014 in order for test cuts to be conducted to the roof.  SOF#47.

On March 19, 2014, Mr. Taylor signed a proof of loss on behalf of Pleasant Green, requesting "No less than: $2,059,416."  SOF#48.  The proof of loss includes amounts for alleged damages to both the interior relating to the ceiling failure, and the exterior roofs.  SOF#49.  On March 28, 2014, Church Mutual sent a letter acknowledging receipt of Pleasant Green's proof of loss and requesting Pleasant Green to submit to Examination Under Oath ("EUO") and provide documentation in support of its claim.  SOF#50.  On April 1, 2014, Church Mutual requested the

3

EUO testimony of Pleasant Green's representatives and additional documentation.   SOF#51.
The EUO was rescheduled at the request of Pleasant Green for April 21, 2014.  SOF#53.

When Pleasant Green first made its claim, it produced the engineering report from
Unified Investigations & Sciences, Inc., written on December 9, 2013, at the request of Pleasant
Green ("Unified Report").  SOF#54.  Pleasant Green concealed an engineering report prepared
by J. Lu International, LLC on June 14, 2013, until immediately before the EUO ("Lu Report").
SOF#62.  The Lu Report concluded the ceiling failure was the result of poor construction, many
years of temperature and moisture changes, long-term moisture and water damage.  SOF#59.
The Unified Report concluded that the tears in the roof were due to weathering, not hail; that
none of the interior moisture was the result of hail; and that the ceiling failure was due to long-
term wear and tear and was not the result of a single hail event.  SOF#55.  It further notes:
"Repairs should be performed to the affected roof locations only."  SOF#56.  Mr. Taylor testified
that he agreed with the conclusions in both the Unified Report and Lu Report and admitted that
Pleasant Green relied upon those two reports to establish the cause of the ceiling failure and
extent of damages.  SOF#63-4.   Mr. Taylor further testified that Pleasant Green intends and
expects Church Mutual to rely upon those reports during Church Mutual's investigation of
Pleasant Green's claim.  SOF#65.

At the EUO, for the first time since making its November 20, 2013 claim, Pleasant Green
contended that the interior ceiling failure which occurred on April 17, 2013 was caused by a hail
storm that happened sometime in April 2012, an entire year earlier.  SOF#71.  Despite providing
engineering reports which concluded that the ceiling failure was not caused by hail and Pleasant
Green's admission that it was relying exclusively on the reports prepared by said engineers,
Pleasant Green still represented under oath that the ceiling failure was caused by hail in April

2012, a year before the ceiling failed.  SOF#71.  Also, for the first time, Pleasant Green contended that it observed a crack in the ceiling shortly after the April 2012 storm.  SOF#67. During the EUO, Mr. Taylor admitted that Pleasant Green never provided notice of the ceiling crack to Church Mutual.  SOF#72.  Mr. Taylor also agreed that Church Mutual was prejudiced by Pleasant Green's failure to report the existence of the alleged crack to Church Mutual to allow Church Mutual the opportunity to view, document, and potentially fix the crack so that no further damage would occur.  SOF#74.

During the EUO of Mr. Taylor and Mr. Wicker, it was disclosed that Pleasant Green has had two roofing companies, Frederic Roofing and Richards Roofing, routinely conduct roof inspections, repairs, and estimates since well before the alleged April 2012 date of loss through the date of the EUO.  SOF#81-99.  Both companies inspected the roof for damage before and after the time period that Pleasant Green claims as the date of loss.  SOF#81-99.  Neither roofing company noticed or found any hail or wind damage before, or after, the alleged April 2012 date of loss.  SOF#81-99.  Indeed, Richards Roofing prepared an estimate to complete minor roof repairs on May 1, 2012 for $3,565.  Frederic Roofing sent Pleasant Green a letter on May 18, 2012, indicating that it replaced one shingle on the domed roof.  SOF#89.

On April 28, 2014, Church Mutual requested additional documentation that Pleasant Green did not provide during the EUO.  SOF#100.  In May 2014, Nixon prepared a report regarding the damages to the building.  SOF#101.  On July 1, 2014, Nixon advised Church Mutual that it would prepare an estimate for the damages to the Building and on July 28, 2014, Nixon provided an estimate for existing damage to the Building's roof for $7,492.15.  SOF#102-03.  Church Mutual filed this Declaratory Judgment action on August 20, 2014.  SOF#104.

Pleasant Green failed to pay its policy premium, which led to the Policy being cancelled in December 2012.  After cancellation, Pleasant Green experienced a ceiling failure.  Finding itself without an insurance policy, Pleasant Green requested that the Policy be reinstated to January 2013.  After Church Mutual refused to reinstate the Policy, Pleasant Green filed a Complaint with the Department of Insurance, which found no wrongdoing by Church Mutual.  Now, without a policy in place and an occurrence of a ceiling failure, Pleasant Green materially misrepresented the date of the loss, attempting to place it within a policy period before the date of cancellation of the Policy.  Pleasant Green has made numerous misrepresentations along the way in its attempt to place the loss date within the period of the Policy and has failed to cooperate with Church Mutual in the claim process.  This Court should grant summary judgment in favor of Church Mutual and against Pleasant Green.

### STANDARD

Summary Judgment should be granted when "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001).  Moreover, "Rule 56(c) mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in his or her favor.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir. 1988).  Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party

6

who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  After the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists.  Fed.R.Civ.P. 56(e).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the non-moving party must establish to the court that there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for him.  *Anderson*, 477 U.S. at 249; *Celotex Corp.*, 477 U.S. at 324.

<u>A</u><u>RGUMENT</u>

**I.**    **Pleasant Green's breach of contract claim fails as a matter of law.**

In Missouri, the burden is on the insured to prove coverage and Pleasant Green is required to show that its alleged damages are covered by the policy.  *Citizens Ins. Co. of America v. Leiendecker*, 962 S.W.2d 446, 451 (Mo. App. E.D. 1998); *Truck Ins. Exchange v. Heman*, 800 S.W.2d 2, 3-4 (Mo. App. W.D. 1990); *American States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo. App. E.D. 1998).   In order to make a prima facie case of coverage, an insured must establish issuance and delivery of the policy, payment of a premium, a loss caused by a peril insured against and notice of loss and proof of loss to the insurer as required by the terms of the policy.  *Kauble v. MFA Mut. Ins. Co.*, 637 S.W.2d 831, 832 (Mo. App. E.D. 1982)(citing *Grossman Iron and Steel Co. v. Bituminous Cas. Corp.*, 558 S.W.2d 255, 259 (Mo. App. 1977)).

Pleasant Green's Counterclaim contends that Pleasant Green suffered a loss in April 2012, "when section in the ceiling of the sanctuary collapsed causing both exterior and interior damage."  Doc#19 at ¶¶11, 43.  Pleasant Green claims that Church Mutual had knowledge in

April 2012 of the loss.  Doc#19, at ¶44.  However, Pleasant Green can provide no evidence supporting its allegation that sections of the ceiling of the sanctuary collapsed, causing exterior and interior damage in April 2012.  Nor can Pleasant Green provide any evidence that Church Mutual had notice of a loss in 2012.

The Policy was cancelled on December 21, 2012.  SOF#4-5.  Pleasant Green has wrongfully alleged that the ceiling failure and notice to Church Mutual occurred in April 2012, prior to the Policy cancellation date, even though all of the evidence shows that the ceiling failed in April 2013, after the Policy was cancelled.  Doc#19, ¶11, 43.  Rather than address the Policy cancellation, Pleasant Green has simply decided to claim that the loss occurred a year earlier, conveniently placing the loss before the cancellation of the Policy.

Because Pleasant Green cannot produce any evidence in support of (1) its claim that a ceiling failure occurred in April 2012 and that such ceiling failure caused interior and exterior damage, or (2) that Church Mutual had knowledge of a loss in 2012, Pleasant Green cannot reach its burden of making a *prima facie* case of coverage.  Because Pleasant Green has no evidence in support of its allegations in Count I of Pleasant Green's Counterclaim, summary judgment should be granted in Church Mutual's favor.

## II.     Pleasant Green's claim under the vexatious refusal statute fails as a matter of law.

A vexatious refusal to pay claim can only be sustained where an insurer refuses to pay a claim "without reasonable cause or excuse."  §375.420 RSMo.  Under the vexatious refusal to pay statute, damages are only to be awarded "in addition to" damages awarded on a judgment, and are calculated based on that award.  *See* §375.420 RSMo.  As a vexatious refusal to pay claim is derivative of an insured's claim for its loss, it must fail where the insured's claim to recover for its loss fails.  *State ex rel. U. S. Fid. & Guar. Co. v. Walsh*, 540 S.W.2d 137,

141 (Mo. App. 1976). Thus, where the insured's breach of contract claim fails, the vexatious refusal to pay claim must also fail. *Grobe v. Vantage Credit Union*, 679 F.Supp.2d 1020, 1034 (E.D.Mo. 2010)("[The insured's] breach of contract claim fails to state a claim upon which relief can be granted. It follows that [the insured's] claim for vexatious refusal to pay must also fail. There is no liability under the policy as a matter of law, and this is a meritorious defense for vexatious refusal to pay.")(*citing Groves v. State Farm Mutual Auto. Ins. Co.*, 540 S.W.2d 39, 42 (Mo. 1976)).

For the reasons stated above, Pleasant Green has no factual support for its claim that Pleasant Green gave any notice to Church Mutual in April 2012 for an alleged loss that occurred in April 2012. Therefore, Pleasant Green cannot satisfy its burden of proving it provided timely notice to Church Mutual for a loss and cannot prevail on its contract claim. Because it cannot prevail on its contract claim, its vexatious claim fails as a matter of law.

In addition to Pleasant Green's vexatious claim failing as a matter of law, Pleasant Green cannot show that Church Mutual acted vexatiously when investigating Pleasant Green's claim. "When an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67 (Mo. banc 2000). In order to prevail on a vexatious refusal to pay claim, an insured must establish that the insurer's refusal to pay was willful and without reasonable cause, as the facts would appear to a reasonable person. *Shaffer v. Federated Mut. Ins. Co.*, 903 S.W.2d 600, 608 (Mo. App. S.D. 1995). The applicable test is how willful and unreasonable an insurer's refusal was as the facts appeared to a reasonable and prudent person at the time coverage was sought. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 387 (Mo. App. W.D. 1999).

An insurer only becomes liable under the statute when it persists in its refusal to pay after it becomes aware it has no meritorious defense. *Hopkins v. American Econ. Ins. Co.*, 896 S.W.2d 933, 939 (Mo. App. W.D. 1995). This is because the statutory remedy is only in place to correct the evil of an insurer's arbitrary refusal to pay for the sole purpose of delaying the insured in the collection of the claim. *Morris v. J.C. Penney Life Ins. Co*., 895 S.W.2d 73, 76 (Mo. App. W.D. 1995).

The statutes are only meant to provide relief to an insured that has been "horsed around" by his insurer once the insured has requested payment under the insurer's policy and are not intended to chill an insurer's right to resist payment and seek a judicial determination as to coverage where there are doubtful legal or factual questions about the insured's claim. *Hopkins*, 896 S.W.2d at 941. When there is an open question of law or fact, a judicial determination can be sought by the insurer without being penalized. *Hocker Oil Co., Inc. v. Barker-Phillips-Jackson, Inc*., 997 S.W.2d 510, 523 (Mo. App. S.D. 1999). "An insurance company may question and contest an issue of fact relating to its liability if it has reasonable cause to believe, and does believe, that there is no liability under its policy and that it has a meritorious defense." *Shaffer*, 903 S.W.2d at 608. Even if there were a subsequent court decision adverse to the insurer's position, this is insufficient to support the imposition of a penalty under the statutes. *Hocker Oil Co., Inc.*, 997 S.W.2d at 523.

The facts demonstrate that Church Mutual acted reasonably. There is no evidence to suggest that Church Mutual's refusal to pay Pleasant Green's claim was done willfully or was unreasonable given the facts that Pleasant Green presented to Church Mutual, and upon which Church Mutual reasonably relied. Church Mutual was first contacted by Pleasant Green on April 17, 2013. SOF#10. At that time, Pleasant Green informed Church Mutual that the interior

10

ceiling had just failed in Pleasant Green's sanctuary.  SOF#10.  Church Mutual referred Pleasant

Green to the cancellation of the Policy.  SOF#11.  Pleasant Green then requested the Policy be

reinstated to January 2013, but Church Mutual denied Pleasant Green's request.  SOF#15-6.

Pleasant Green then filed a Complaint with the Department of Insurance and the Department of

Insurance determined, on September 27, 2013, that Church Mutual did not act improperly.

SOF#21-3.

At this point in time, between April 17, 2013 and November 20, 2013, Church Mutual

had no duty to investigate the claim any further because the policy had been cancelled.  Debbie

Champion succinctly addresses this point as follows:

> Q:  Your third opinion: Church Mutual had no duty to investigate the claim of
>     Pleasant Green Missionary Baptist Church once they determined that the claim
>     asserted did not fall within a policy period of a Church Mutual policy.
> A:  Correct.
> Q:  Why do you make that statement?
> A:  Okay.  So we're still talking about April 17, 2013, and – and what I say here is
>     you must remember, although I think it's the same with any company, but even
>     more so with a mutual company, with a mutual company you have an obligation
>     to your insured, just like every other insurance company has, but you also have to
>     know that these people are owned by the various policy holders.  And so, they
>     also have an obligation to their policy – their policy holder and their owners.  And
>     so, there's this – there's in balance you have to do and as insurance carrier as any
>     business would do you have an obligation to investigate, but that obligation to
>     investigate kicks in only after it appears there may be coverage.  And on 4/17 they
>     get a call from somebody who used to be their insured telling them that something
>     happened and that they have a date of loss, which is clearly outside the policy
>     period clearly, because the policy was cancelled in December and they're telling
>     them it happened a couple of days ago.   And so, the actual policy ran from
>     September to December of that year.  It did not go into 2013.  They had been told
>     by – by Pleasant Green Church that their injury, their damage had just occurred
>     when they determined there is no coverage, because the policy's been cancelled.
>     Then the next issue is as your expert said:  Well, they should go ahead and
>     investigate it.  And in my opinion that's absolutely inappropriate.  If they had – if
>     they go on and they investigate claims they clearly know that are not covered
>     under an insurance policy with them then they are wasting the resources of their
>     owners…You don't investigate a claim unless you have a reason to know and
>     need to know what the value of that claim is so that you can pay it under your
>     policy so that you can attempt to determine whether or not there's coverage or try

11

to find out whether there's coverage…any other duties of investigation stops once they know there's no policy period, there's no policy open to cover this claim.

SOF#105.

Furthermore, there was no duty to investigate the cause of loss based on what Pleasant Green represented to Church Mutual about the loss:

Q:    And so, do you think that the insurance company had any duty to investigate whether or not that ceiling spontaneously fell on that date or whether there were earlier events that took place that caused the ceiling to fall on that particular date?

A:    No based on what they were told that day.  Now, if they had been based – if they had been told that there was some other events that we think contributed to cause that ceiling to fall on that day and we think those events might have occurred within your policy, our policy, when we did have coverage, then yes, I would change my opinion, but they weren't told that.

SOF#105.

After the Department of Insurance found that Church Mutual did not act improperly, Pleasant Green contacted Church Mutual on November 20, 2013, claiming an April 2012 loss date.  SOF#26.  This is the first time that Pleasant Green informed Church Mutual that it was making a claim with a date of loss within a policy period.  SOF#26.  Having received a claim within a policy period at that time, Church Mutual immediately began to investigate the claim, hired an independent adjuster, and made appropriate contact with the insured.   SOF#27-9.  Church Mutual then thoroughly investigated the facts surrounding the loss, including inspecting the property, hiring an engineer to further inspect the property, sending a reservation of rights letter, requesting a proof of loss, taking the insured's representatives' examinations under oath, requesting documentation, and various other investigative actions.  SOF#26-9, 32-5, 40-2, 44-7, 50-1, 53-80, & 100-04.  Church Mutual did this timely and reasonably based on the ever-shifting facts being presented by the insured.  SOF#106.

Indeed, Church Mutual acted exemplarily throughout the claim, and went above and beyond what an insurance company is required to do by filing a declaratory judgment instead of denying Pleasant Green's claim:

> Q:    So, you're not going to offer any opinions as to why the DJ was filed or whether or not that was appropriate?
>
> A:    I can definitely offer an opinion as to why I think it's appropriate…my opinion would be that while it's not required or necessary in Missouri that it is the best practice when you are unsure whether or not the facts that you've been presented with require you to provide coverage to a claimed insured.  And so I think out of an abundance of caution they wanted to do things the right way.  And so, in my opinion it was appropriate, went above and beyond the obligation of Missouri for an insurance company to do.

SOF#109.

The factual record demonstrates that Church Mutual was not vexatious in notifying Pleasant Green of the policy cancellation or in investigating Pleasant Green's claim made on November 20, 2013.  Given the facts provided by Pleasant Green and the constantly changing narrative it presented to Church Mutual in an effort to obtain coverage for its claimed damages, Church Mutual's refusal to pay was reasonable, and certainly was not willfully unreasonable.  Summary judgment should be granted in Church Mutual's favor and against Pleasant Green on Count II of Pleasant Green's Counterclaim.

**III.    Pleasant Green's claim for damages relating to the interior of its building are not covered under any Church Mutual policy.**

**A.    Pleasant Green's policy was cancelled prior to the ceiling failure.**

If a policy is cancelled, then claims which are dependent upon existence of insurance coverage cannot succeed.  *Stone v. Farm Bureau Town & Country Ins. Co. of Missouri*, 203 S.W.3d 736, 744 (Mo. App. S.D. 2006).

The Policy allows for Church Mutual to cancel the Policy upon non-payment of premium by the insured.  SOF#3.  The Policy was rightfully cancelled on December 21, 2012, due to non-

payment of premium.  SOF#4-5.  On April 17, 2013, Pleasant Green contacted Church Mutual

regarding the ceiling failure.  SOF#10.  Church Mutual advised that the policy was cancelled.

SOF#11.  Pleasant Green acknowledged that the policy was cancelled, admitted to receiving the

cancellation notifications, and admitting to having "mishandled" the receipt of the notice:

> A:      And, the cancellation notice, we don't know how it was mishandled but we have
> two clerks and somehow it was – we know they were date-stamped but they did
> not come to my attention or Carlton's attention until the following week.  We just
> were not aware that we were in cancellation and our financial clerk, again,
> assumed we would be getting another statement in February for another quarter,
> quarterly payment.

SOF#8.

> A:      Now, we have, unfortunately – well, we have a financial clerk who handles all
> invoice payments as well as tracking of our revenues and expenses.  We have
> another clerk who does nothing related to finances but she does handle mail,
> okay.  And our theory is that she somehow time-stamped the document, the
> financial clerk did not see it, it was – maybe it was put in the wrong mail tray or
> something but neither Carlton nor I were aware of the cancellation, again, until
> April.

SOF#8.

After attempting to make a claim for the April 2013 ceiling failure under the cancelled

Policy, Pleasant Green then requested that Church Mutual reinstate the Policy to January 2013 so

that the Policy would cover the interior ceiling failure of April 2013.  SOF#15.  Church Mutual

declined to do so.  SOF#16.  Church Mutual offered to write Pleasant Green a new policy, not

covering the interior ceiling damage to the church, which Pleasant Green accepted.  SOF#18.

Pleasant Green then filed a Complaint with the Department of Insurance, claiming Church

Mutual wrongfully cancelled the Policy.  SOF#21.  The Department of Insurance found no

wrongdoing in Church Mutual's cancellation of Pleasant Green's Policy.  SOF#23.

Because the occurrence of the ceiling failure happened after Church Mutual cancelled the

Policy, Pleasant Green had no Policy with Church Mutual at the time of the ceiling failure.  The

14

damages relating to the interior ceiling failure are not covered and this Court should enter summary judgment against Pleasant Green for its alleged interior damages.

**B.     In addition to the Policy having been cancelled, the ceiling failure was caused by an excluded cause of loss pursuant to the terms of the Policy.**

The Policy was cancelled prior to the occurrence of the ceiling failure.  Regardless, the ceiling failure was caused by an excluded cause of loss pursuant to the terms of the Policy.  The two engineering reports requested by Pleasant Green and provided to Church Mutual to rely upon, the Unified Report and Lu Report, demonstrate that the sole causes of the ceiling failure are excluded under the terms of the Policy.  SOF#54 & 59-61.  Pursuant to the conclusions contained in the Unified Report and Lu Report, the ceiling failure occurred due to inadequate construction, continuous and repeated long-term water seepage and moisture, and general age-related wear and tear.

"Definitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies.  If they are clear and unambiguous within the context of the policy as a whole, they are enforceable."  *Yager v. Shelter Gen. Ins. Co*., 460 S.W.3d 68, 71 (Mo. App. W.D. 2015)(*quoting Allen v. Continental W. Ins. Co*., 436 S.W.3d 548, 553-54 (Mo. banc 2014)).

**i.     Faulty, Inadequate, or Defective**

The Policy excludes damage caused by "faulty, inadequate, or defective…(2) design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) materials used in repair, construction renovation or remodeling; or (4) maintenance of part or all of any property on or off the described premises."  SOF#3.

The Lu Report demonstrates that the ceiling was faulty, inadequately designed, and inadequately constructed.  SOF#59.  The Lu Report finds that "[t]ypically the wood nailers are secured by through bolding to the bottom angles of a steel truss.  But it appeared that the nailers

15

were merely nailed to another wood block on top of steel angle through the holes in the steel angle." SOF#60. Furthermore, it notes that there was "no insulation found in attic space and stains of moisture and water were apparent in many areas in roof and ceiling framing." SOF#59-61. Finally, it concludes: "[t]he original construction of ceiling framing is not adequate and lack of positive mechanical suspension from solid structure above." SOF#59. It includes a photograph of a wood nailer that was pulling away from a steel truss, noting: "Instead of being fastened with through bolts, it was merely nailed to a wood block above through a hole in steel angle." SOF#60.

Because the ceiling failure occurred due to faulty construction, an excluded cause of loss under the Policy, Pleasant Green's ceiling is excluded from coverage under the Policy.

### ii.    Continuous or Repeated seepage or leakage of water

The Policy excludes damage caused by "continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more." SOF#3.

The Lu Report shows that moisture and water damage leakage over long periods of time caused the ceiling to fail. SOF#59-61. This long-term moisture damage occurred over many years, and certainly, over a much longer period of time than 14 days. SOF#59. It notes: "During many years temperature and moisture changes, the grip between nail and wood joist got loose and eventually the plaster fell off and collapse due to its own weight." SOF#59. It continues: "Moisture from condensation in attic space and past roof leakage caused moisture and water damage to wood ceiling framing members and increase in weight of plaster." SOF#59. The Lu Report contains a photo showing the stains from water and moisture exposure. SOF#61. The Unified Report added: "Elevated levels of moisture in the attic space above the auditorium

16

ceiling due to inadequate ventilation could not be ruled out as a cause of the ceiling collapse." SOF#56.  The church experienced long-term issues with water leaking that predates the April 2012 claimed date of loss.  SOF#55-6, 59-61, & 66.

Because the ceiling failure occurred due to long term, repeated water leakage and moisture, Pleasant Green's ceiling failure is excluded from coverage under the Policy.

### iii.    Wear and Tear Exclusion

The Policy excludes damage caused by "(1) wear and tear; (2) rust, or other corrosion, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself" or "(4) settling, cracking, shrinking, or expansion."  SOF#3.

The Unified Report concludes that the "collapse of the auditorium ceiling was the result of age-related deterioration of the ceiling, which included the nails attaching the ceiling to the joists slipping out of the joists over time."  SOF#55.  Furthermore, work estimates, records, and testimony from Richards Roofing and Frederic Roofing demonstrate that the damage to the exterior roofs occurred over years of age-related deterioration and did not result from hail and/or wind damage.  SOF#81-99.

Because the ceiling failure occurred due to long term age-related deterioration and wear and tear, Pleasant Green's ceiling failure is excluded from coverage under the Policy.

### IV.   The factual record does not support Pleasant Green's claim for damages to the exterior roofs of the Building.

Within a month after the ceiling failure, Pleasant Green inspected the roofs and found no hail damage.  SOF#17.  Yet in November 2013, Pleasant Green presented Church Mutual with an estimate for $1,200,000 in relation to its exterior roof damage.  SOF#36-8.  However, this estimate was an estimate for the cost to entirely replace all the roofs on the Building, not limited to the cost for addressing the alleged hail damage.

Pleasant Green had Quentin Ragan, author of the Unified Report, inspect the Building's roofs. SOF#54. He found minimal hail damage and recommended fixing the portions of the roof that did suffer hail damage. SOF#55-7. However, despite Pleasant Green knowing the conclusions and recommendations from the Unified Report to make repairs to only the damaged portions of the roofs, Pleasant Green misrepresented to Church Mutual that it needed all of its roofs replaced and sent Church Mutual an estimate for complete replacement of the Building's roofs for over $1,200,000.

When Church Mutual hired an engineer to inspect the roof, it discovered that the roof had minimal hail damage, almost exclusively on the soft metal portions of the roof, and it was determined that the actual extent of damage to the roofs is $7,492.15. SOF#76-80 & 101-03.

In further confirmation of the limited hail damage, two third-party companies that have been hired by Pleasant Green over numerous years to investigate roof damage and make roofing repairs, including before and after the alleged hailstorm that caused the alleged damage, testified that neither company ever saw significant hail damage to the roof. SOF#81-99. Frederic Roofing and Richards Roofing were both called to inspect the roofs and make repairs numerous times. Each company confirmed that they would look for roof damage while on the Building's roofs. SOF#98. They both also testified that if they saw any roof damage, they would have reported it to Pleasant Green. SOF#98. It would be in each company's best business interest to find roof damage and report it to Pleasant Green with the hopes that Pleasant Green would hire the respective company to repair the damage.

Frederic Roofing found some instances of damaged shingles due to hail, but always replaced the damaged shingles when they were discovered. SOF#83-93 & 97. Richards Roofing also found no evidence of hail damage. SOF#96 & 99. Each company confirmed that the roofs

were not hail damaged, but rather, they were old and worn out.  SOF#99.  The roofs were suffering from weathering and age-related deterioration and the roofs needed to be replaced, wholly independent from any alleged hailstorm event.  SOF#96-7 & 99.  Furthermore, Richards Roofing prepared various estimates for Pleasant Green to replace old roofs prior to the alleged April 2012 hailstorm that allegedly caused roof damage.  SOF#94.

Pleasant Green materially mispresented the damages it sustained.  It made a claim for over $1,200,000 for the replacement of old roofs and falsely claimed they were hail damaged in order to get Church Mutual to pay for their replacement.  The exterior damages have been materially misrepresented in scope and amount and this Court should grant Church Mutual's Motion for Summary Judgment regarding Pleasant Green's claim for damages to its roofs.

**V.     Pleasant Green failed to cooperate in Church Mutual's investigation of the claims and made numerous misrepresentations to Church Mutual and therefore the Policy is void.**

**A.     Failure to Cooperate**

It is well established in Missouri that cooperation clauses, such as the one in the Policy, are valid and enforceable.  *Wiles v. Capitol Indem. Corp*., 215 F.Supp.2d 1029, 1031 (E.D. Mo. 2001)(citing *Riffe v. Peeler*, 684 S.W.2d 539, 542 (Mo. App. W.D. 1984)).  The purpose of a cooperation clause is to "enable the [insurance] company to possess itself of all knowledge, and all information as to other sources of knowledge, in regard to facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims."  *Id*. (quoting *Wood v. Allstate Ins. Co*., 21 F.3d 741, 745 (7th Cir. 1994); *Claflin v. Commonwealth Ins. Co. of Boston, Mass*., 110 U.S. 81, 94-95 (1884)).

 After establishing a material breach of the cooperation clause, the insurer is entitled to deny coverage to the insured under the terms of the policy as long as the insurer has not waived

19

its right to assert the defense or is estopped from asserting it.  *Id.* (citing *Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. banc 1979)).

Missouri courts have consistently held that compulsory discovery in a lawsuit is no substitute for an insured's original cooperation.  *Roller v. American Modern Home Ins. Co.*, 484 S.W.3d 110, 117 (Mo. App. W.D. 2015)(cit*ing In re Am. Wood Concepts, LLC*, 2010 WL 1609690 at *5 (Bankr. W.D.Mo. 2010); *Union Ins. Co. of Providence*, 261 F.Supp.2d at 1153; *Wiles*, 215 F.Supp.2d at 1031-32).  Consequently, it should not be necessary for an insurer to bear the expense of a lawsuit to enforce its rights to discovery of information pertaining to a claim.  *Id.* (*citing In re Am. Wood Concepts, LLC*, 2010 WL 1609690 at *5).

### i.     Pleasant Green failed to give prompt notice of the loss.

"Conditions of an insurance policy which require that the insured give notice of a loss to the insurer within a certain time are valid and enforceable."  *East Attucks Community Housing, Inc. v. Old Republic Sur. Co.*, 114 S.W.3d 311, 326 (Mo. App. W.D. 2003)(citing *Johnston v. Sweany*, 68 S.W.3d 398, 401 (Mo. banc 2002)).  Generally, when a policy does not specify a time period within which the insured is to give notice to the insurer, notice is to be given within a reasonable time.  *Travers v. Universal Fire & Cas. Ins. Co*., 34 S.W.3d 156, 165 (Mo. App. W.D. 2000)(*citing* 4 COUCH, supra at §65:77; *Independent Fire Ins. v. NCNB Nat. Bank*, 517 So.2d 59, 65 (Fla. App. 1 Dist. 1987)).

The question of whether notice of loss was given within a reasonable time is usually a question for the jury, however, "where all reasonable persons would conclude that notice or proof was not given or made within [a reasonable] time, under all the circumstances, then it becomes a question of law for the court."  *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 14 (Mo.

banc. 1995); *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1029 (8th Cir. 2003).

Once an insurer establishes that it was prejudiced by the insured's failure to comply with the notice provisions of the policy, it is permitted to deny coverage. *Billings Mut. Ins. Co. v. Cameron Mut. Ins. Co.*, 229 S.W.3d 138, 143 (Mo. App. S.D. 2007)(citing *Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 821 (Mo. banc 1997)).

Pleasant Green initially contacted Church Mutual on April 17, 2013, informing Church Mutual that the ceiling in Pleasant Green's sanctuary failed. Church Mutual informed Pleasant Green that the policy was cancelled in December 2012. Seven months after having been informed of the cancellation, Pleasant Green made a claim with Church Mutual, alleging roof damage with a date of loss in April 2012, nineteen months prior to the notice of the claim.

Had Church Mutual been timely notified of the alleged hail damage to the roof, it could have investigated the roof and determined the extent of any alleged hail damage. Furthermore, had Church Mutual been given proper notice, it would have been able to distinguish between any alleged hail damage that may have occurred during a policy period and hail damage that may have occurred after the Policy was cancelled. If all of the alleged hail damage to the roof occurred between December 21, 2012 and April 2013, then the hail damage would have occurred after the Policy had been cancelled. Because notice was not provided to Church Mutual, Church Mutual was prejudiced by not being given an opportunity to make such determinations.

Furthermore, the Unified Report and the Lu Report both confirm that the ceiling failure occurred due to long term moisture and water damage and age-related wear and tear. SOF#55-6 & 59-61. Despite having this knowledge, Pleasant Green represented to Church Mutual that it noticed a crack develop in the ceiling in April 2012, and testified that the crack led to the ceiling

failure.  SOF#67 &70-1.  Pleasant Green claims that it had knowledge of the crack and that the crack was spreading, causing additional damage to the property.  SOF#68.  Pleasant Green testified that it knew the crack had to be addressed and fixed.  SOF#68-9.  Therefore, even if a crack did develop in April 2012, Pleasant Green did not notify Church Mutual of the crack until the EUO, a year after the ceiling failed and two years after Pleasant Green had knowledge of the crack and the damage continuously resulting to the church.  SOF#72.

Pleasant Green also acknowledges that they should have notified Church Mutual of the crack and damage when they first became aware of it.  SOF#68 & 73-4.

Q:    Can you see how that could prejudice their position if they understood that you have some loss, whether it be the 15th of April, the 28th of April and they're brought out there at that time to look at it and assess it, maybe something could have been done so a year didn't go by to where it was progressed to cause the other damage?  You understand they weren't given that opportunity?
A:    Well, I can see how we were negligent or remiss in not getting them out when we first noticed the crack, that's what I can see.
Q:    Okay.
A:    We should have done that, I agree.  We didn't.  Again –
Q:    And a year went by.  That's all I'm saying.
A:    Yeah.
Q:    A year went by and a lot of stuff could occur.  Now, you appreciate that, don't you?
A:    Exactly.

SOF#73.

Q:    You're the ones that told me you saw this problem in April 2012 –
A:    Well, it became –
Q:    - and it wasn't reported to the insurance company.  That's all.
A:    It became a problem that we couldn't ignore.  I mean, when it was a crack, when it was a hairline crack that developed over time, we did realize something had to be done but as far as the urgency and determining the cause and all of that, obviously the failure made that impossible to put off.  We had to do that. So, I mean, it wasn't as if – well, anyway, I've explained it.  I think certainly in hindsight we should have perhaps contacted Church Mutual when we discovered the crack and I'll concede that we should have probably been inspecting the roof after every hailstorm and certainly going forward we will do that but we didn't, okay, and what we have to go on is what the engineers are saying at this point.

22

SOF#68.

Pleasant Green failed to provide Church Mutual with reasonable notice of the development of the damage from the ceiling crack. Based on Pleasant Green's sworn testimony and admissions about the ceiling crack and damages that existed in April 2012 and which they claim caused the ceiling failure, Church Mutual was extremely prejudiced by not being notified of the crack and damages when they developed. If Church Mutual had notice of that, it would have had the opportunity to inspect the property and make any repairs that were needed to prevent further spreading and damage. Instead, Pleasant Green failed to notify Church Mutual of the known problem with the ceiling and allowed the ceiling damage to spread for a year until the ceiling fell in April 2013.

Because Church Mutual was prejudiced by Pleasant Green's failure to provide notice, this Court should grant summary judgment in favor of Church Mutual.

### ii.      Pleasant Green failed to take reasonable steps to protect the property from further damage.

Pleasant Green's Unified Report and Lu Report document that the ceiling failure resulted from long-term moisture and water damage and age-related wear and tear. SOF#55-6 &59-61. In addition, Pleasant Green claims that it knew about a crack in the ceiling in April 2012, which led to the ceiling failure. Pleasant Green admits that it was negligent and failed to take reasonable steps to address the crack, to stop it from spreading, and to stop it from further damaging the ceiling.

Pleasant Green claims that a crack became noticeable in the ceiling sometime in April 2012. SOF#67. After discovering the crack, Pleasant Green did not report the crack to Church Mutual. SOF#72. Pleasant Green knew that they should have an engineer look at the crack but failed to do so for over a year. SOF#69. Furthermore, Pleasant Green knew of the leaking issues

23

in the roof and ceiling for numerous years before the ceiling failed and before the development of any crack.  SOF#66.  Indeed, Pleasant Green had a roofing company inspect the roof related to leaking issues before the ceiling failure and before any alleged development of a crack. SOF#81-2, 94, & 96.

Pleasant Green acknowledged that it should have had the crack addressed when it first noticed the crack and should have provided notice of crack to Church Mutual.  SOF#69. Pleasant Green also knew that the Building was experiencing water leaking and moisture damage before April 2012 and ongoing through the time of the ceiling failure.  SOF#66.  It knew that the water was causing additional damage to the Building.  Pleasant Green failed to do anything to address the crack when they first noticed it, allowing the crack to grow in size and spread, causing further damage to the ceiling.  By allowing the crack to spread and by failing to address the long time ongoing water intrusion, Pleasant Green failed to take reasonable steps to protect its property from further damage, in violation of its responsibilities under the Policy.  Summary Judgment is warranted.

### iii. Pleasant Green failed to provide all the requested documents and information.

Pleasant Green failed to provide all of the documents and information requested by Church Mutual.  Most notably, Church Mutual requested that Pleasant Green provide it with any estimates that Pleasant Green received for work to the exterior roof.  SOF#51.  Pleasant Green provided an estimate from Allstate Roofing for the complete replacement of all of its roofs and provided two estimates from Richards Roofing, each one being an estimate for single roofs. SOF#36-8 & 95.  However, Pleasant Green failed to disclose prior Richards Roofing estimates that Pleasant Green received before and immediately after its claimed date of loss of April 2012.

24

Richards Roofing provided an estimate on May 1, 2012, within two weeks after its alleged date of loss, for $3,565 worth of roof repairs.  SOF#95.  Richards Roofing had inspected the roof at that time and looked for any hail damage to the roof.  SOF#96.  However, Richards Roofing found no evidence of hail damage and only suggested $3,565 worth of repairs to the roof.  SOF#95-6.  By withholding this information from Church Mutual, Pleasant Green sought to hide and conceal the disclosure of evidence that would demonstrate that the roof was not impacted by hail in April 2012, as Pleasant Green claims.   Pleasant Green withheld documentation that would assist Church Mutual in its investigation into the date of loss and extent of damages.

Other Richards Roofing documentation also had not been disclosed, such as suggestions in 2006 that Pleasant Green replace various roofs and repair various issues causing leaks such as caulking to the stain glass windows, tuck-pointing, and waterproofing, an estimate to replace roofs on the Building in 2008, suggestions that Pleasant Green replace roofs in 2011 in order to address roof leaking issues, and various other roof repair estimates and suggestions from 2005, 2007, 2008, 2010, 2011, 2012, and 2013, none of which were hail related.  SOF#81-99.

Withholding this information was prejudicial to Church Mutual because Pleasant Green hid and concealed the true condition of the roof prior to and after the alleged April 2012 hail storm.  Pleasant Green failed to cooperate with Church Mutual's investigation by not providing important documentation from Pleasant Green's roofers.  Summary judgment should be entered in favor of Church Mutual.

### B.    Misrepresentation

Insurance policies which contain language that provides for the entire policy to be voided if an insured knowingly conceals or misrepresents any material fact or circumstance related to

the insurance claim have been deemed to be valid and enforceable in Missouri. *Neidenbach v. Amica Mut. Ins. Co.*, 96 F.Supp.3d 925, 930 (E.D. Mo. 2015). In Missouri, a misrepresentation in an insurance claim as to a portion of the loss may void coverage as to the entire claim. *Liberty Mutual Fire Ins. Co. v. Scott*, 486 F.3d 418, 423 (8th Cir. 2007)(citing *Childers v. State Farm Fire & Cas. Co.*, 799 S.W.2d 138, 140 (Mo. App. E.D. 1990)). The court in *Cedar Hill Hardware* rejected the insured's argument that an insurer must prove the elements of fraud, including intent to deceive and reliance, to void a policy where the policy provides it be rendered void by a misrepresentation or concealment. *Cedar Hill Hardware and Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 346 (8th Cir. 2009).

Pursuant to the terms of the Policy, any concealment or misrepresentation of a material fact concerning the claim voids the Policy. SOF#3.

Pleasant Green initially represented to Church Mutual that the date of loss was April 17, 2013. SOF#10. After being told that their Policy had been cancelled in December 2012, Pleasant Green attempted to get its Policy reinstated to January 2013, to include the April 17, 2013 ceiling loss under the Policy. SOF#15. When Church Mutual declined to reinstate the Policy, Pleasant Green complained to the Department of Insurance that the Policy was wrongfully cancelled. SOF#21. The Department of Insurance found that there was no evidence that Church Mutual wrongfully cancelled the Policy. SOF#23.

After being unsuccessful in reinstating the Policy to January 2013, Pleasant Green hired a contractor and a public adjuster to assist Pleasant Green with its claim. SOF#24-5 & 39. At that time, Pleasant Green shifted stories, misrepresenting that a storm in April 2012 ultimately caused the ceiling failure. SOF#26. Pleasant Green hired an engineer with Unified to attempt to confirm this new theory, yet the Unified Report found that the ceiling failure was due to long-

term age-related wear and tear and was not caused by a storm event.  SOF#54-7.  Still

undeterred, Pleasant Green then contended during its EUO, that a storm in April 2012 caused a

crack in a window alcove that spread through the ceiling and caused the ceiling failure.

SOF#67-71.  Finally, when litigation commenced, Pleasant Green disclosed an expert that has

claimed that reverberations from hail in April 2012 caused the ceiling to fail in April 2013

(although for the reasons stated in Church Mutual's Motion to Strike Expert Report and Expert

Testimony of Mark Towner, such expert should be stricken and his opinion disregarded).

Pleasant Green continued to shift its story again and again after each prior story failed to bring

the damage within coverage under the Policy.  Insurance expert Debbie Champion noted in

regard to Pleasant Green's actions of attempting to place the cause of loss within a coverage

period:

> A:     My question comes when you continue to hire people who tell you the same thing
> over and over and over again and you just keep hiring until you find somebody to
> tell you something different.

SOF#108.

Pleasant Green also greatly misrepresented its damages.  It made a claim for $907,233.98

in damages to the interior of its building while having knowledge that it only required less than

$400,000 to fix the interior of its building, and other items.  SOF#38-9.  Indeed, Pleasant Green

had an ongoing fundraising project to make various upgrades to the church and church

equipment and to make repairs to the interior.  SOF#25.  The goal of said fundraising project was

to raise $570,000 to cover the interior damage and upgrades.  SOF#25.  Pleasant Green knew

that its interior damages were far less than half of the $907,233.98 represented to Church Mutual

under oath.

Further, Pleasant Green initially reported that it inspected the roof in May 2013 and found no hail damage. SOF#17. Quentin Ragan, author of the Unified Report, found minimal damages to the roof and suggested that Pleasant Green only make repairs to the damaged portions of the roof. SOF#56. This minimal hail damage was confirmed by two independent third-party roofing companies, as well as an engineer from SEA, Ltd. SOF#59-61 & 81-99. Yet, despite the findings in the Unified Report, and despite the knowledge that its roofs needed to be replaced due to age-related deterioration, not hail damage, Pleasant Green presented an estimate to Church Mutual that included the complete replacement of all of Pleasant Green's roofs for an amount in excess of $1,200,000. SOF#36-8. Pleasant Green represented that all of the roofs were needed to be replaced due to hail that occurred in April 2012. SOF#36-8. Pleasant Green greatly inflated and misrepresented the extent of repairs that were needed to the exterior roofs, as well as the value of the repairs and the cause of the damage.

Throughout the claim and investigation, Pleasant Green misrepresented the date of loss, the cause of the ceiling failure, the extent of damage to the roof and interior, and the damages in its proof of loss. These are material misrepresentations that greatly prejudiced Church Mutual's ability to adjust Pleasant Green's claim and cost Church Mutual time and money to investigate the misrepresentations. The misrepresentations about the date of loss directly affect whether Church Mutual had a Policy in affect at the time of loss. The misrepresentations about the cause of the loss directly affect whether the damages were covered or excluded under the terms of the Policy. The misrepresentations as to the extent of damages directly affect what was being sought by Pleasant Green. Each of these misrepresentations standing alone would justify voiding the policy, but taken in their entirety, this Court should void the Policy and grant summary judgment in favor of Church Mutual.

Debbie Champion aptly summarized Pleasant Green's misrepresentations, failure to cooperate, and actions thusly:

> A:     So – so here's my point:  You kind of see the big picture, I think, of what we've been going through…the church comes in April and they say this just happened, we've got brand new date of loss and we tell them you don't have a policy.  They then spend months saying: Yes, we do have a policy.  We should have had a policy when he contradicted the fact that they knew they hadn't paid their premiums.  They then go and they try to prove they have a policy.  During those months they never say: Oh, gee, the date of loss is wrong.  They never say: We think it might have been contributed to over a period of time, despite the fact that during those months they did get people in there to do investigations on that roof who told them this has been years of wear and tear and damage years over all these years is what caused this to fall.  And instead of turning that over to the insurance company they simply relied upon their April 15 '16 date of loss during those months…I think if you look at historically what they knew and when they knew it, they – it – it appears that they made inconsistent statements from or they had inconsistent knowledge about what caused this.  And it's my opinion in looking at it that they simply continued to hire one person after another person after another person to look at this roof until they ultimately hired a guy who was an independent adjuster, who came out there and said: I can make your claim for you and he did.  And that – and that is very suspicious and certainly inconsistent. And one thing versus the other has to be misrepresentation.

SOF#108.

> Q:     So, I want to make sure I understand your testimony: It's your opinion that there's enough evidence against Pleasant Green that Church Mutual could void the policy?
> A:     They could have.  They didn't.  I think there's plenty of to allow the court to find as a matter of law the policy is void.

SOF#108.

Pleasant Green allowed the Policy to be cancelled, suffered a ceiling failure after the Policy was cancelled, and then misrepresented the date of loss to place it within a policy period prior to the cancellation date of the Policy, while making numerous other misrepresentations along the way.  Because of Pleasant Green's numerous misrepresentations, failure to cooperate in Church Mutual's investigation into its claim and, clear attempt to shop around for facts that

would place its loss within a policy period, the Policy is void as a matter of law and this Court should grant Church Mutual's Motion for Summary Judgment.

<u>CONCLUSION</u>

Any one of the following is a sufficient ground for this Court to grant summary judgment:

- The loss occurring after the Policy was cancelled;
- The loss being caused by an excluded cause of loss under the Policy;
- Pleasant Green failing to cooperate; or
- Pleasant Green making any misrepresentation.

The factual record shows that each of the following occurred:

- The loss occurred in April 2013, after the policy was cancelled in December 2012;
- The loss was caused by improper construction, long-term water and moisture damage, and age-related deterioration;
- Pleasant Green failed to give prompt notice of the claim;
- Pleasant Green failed to prevent further damage to its property;
- Pleasant Green failed to provide all the requested documentation;
- Pleasant Green withheld and concealed relevant documentation;
- Pleasant Green misrepresented the date of loss;
- Pleasant Green misrepresented the cause of loss;
- Pleasant Green misrepresented the extent of the loss; and
- Pleasant Green misrepresented its damages.

WHEREFORE, for the foregoing reasons, Church Mutual respectfully request that this Court grant its Motion for Summary Judgment and any other relief that this Court deems just and appropriate.

Respectfully submitted,


/s/ Robert W. Cockerham
Robert W. Cockerham  #31984MO
COCKERHAM & ASSOCIATES, L.L.C.
Attorneys for Plaintiff/Counterclaim
Defendant Church Mutual Insurance Co.
10803 Olive Blvd.
St. Louis, Missouri 63141
(314) 621-3900
(314) 621-3903 (fax)
rcockerham@cockerhamlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2016 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing service on the following: Ms. Brandee B. Bower, Attorney for Defendant, 999 18th Street, Suite 3000, Denver, CO 80202.


/s/ Robert W. Cockerham