# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:14-cv-01449-JCH |
| PLEASANT GREEN MISSIONARY BAPTIST CHURCH, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Church Mutual Insurance Company's ("Church Mutual") Motion for Summary Judgment and Pleasant Green Missionary Baptist Church's ("Pleasant Green") Motion for Partial Summary Judgment. (ECF Nos. 55, 58.) Also pending before the Court are the Parties' Motions to Strike the reports and testimony of several experts. (ECF Nos. 53, 61, 63.) The Motions have been fully briefed and are ready for disposition.

## BACKGROUND

The summary judgment record reveals the following facts. Pleasant Green owns a building located at 1220 Rev. G. H. Pruitt Place in St. Louis, Missouri (hereinafter, the "Building"). Pleasant Green had a policy of insurance for the Building through Church Mutual (hereinafter, the "Policy"), which provides, in pertinent part:

### COMMON POLICY CONDITIONS

All coverage parts included in this policy are subject to the following conditions:

**A. CANCELLATION, NONRENEWAL AND DECREASES IN COVERAGE**

…

1

> 2. We may cancel, nonrenew, reduce in amount or adversely modify this policy by mailing or delivering to the first Named Insured written notice of this action at least:
>
>> a. Ten (10) days before the effective date of this action if due to nonpayment of premium or evidence of incendiarism;
>> …
>
> 4. Notice of:
>
>> a. Cancellation will state the effective date of cancellation. The policy period will end on that date.
>> …
>
> **PROPERTY CONDITIONS**
> …
>
> **A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
>
> This Coverage Part is void in any case of fraud by you relating to it. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> …
> 4. A claim under this Coverage Part.
> …
>
> **C. LOSS CONDITIONS**
> …
> 3. Duties in the Event of Loss or Damage
>
>> a. You must see that the following are done in the event of loss or damage to the Covered Property:
>> …
>> (2) Give us prompt notice of the loss or damage. Include a description of the property involved;
>>
>> (3) As soon as possible, give us a description of how, when, and where the loss or damage occurred;
>>
>> (4) Take all reasonable steps to protect the Covered Property from further damage…

(Plf. Ex. 2, ECF No. 56.2.) The Policy also contains a provision that excludes from coverage certain causes of loss, including "wear and tear"; "continuous or repeated seepage or leakage of water, or the presence of condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more"; and "faulty, inadequate, or defective…design, [or] construction." *Id.*

On December 6, 2012, Church Mutual sent a Notice of Cancellation to Pleasant Green for nonpayment of the Policy premium. The Notice provided Pleasant Green until December 21, 2012 to make payment in order to avoid cancellation. (Plf. SUMF ¶ 4, Plf. Ex. 3.) On December 27, 2012, Church Mutual sent a final billing statement to Pleasant Green, indicating that the "Policy Period" had run from "09/17/12 - 12/21/12" and that the Policy was "[c]ancelled," and requesting payment for an earned premium. (Plf. SUMF ¶ 5, Plf. Ex. 5.) Pleasant Green paid the earned premium, and on January 29, 2013, Church Mutual sent a letter to Pleasant Green acknowledging receipt of the "earned premium," and confirming that "coverage on this policy has ceased." (Plf. SUMF ¶¶ 6, 7; Plf. Ex. 7.)

On April 17, 2013, the ceiling of the Building's sanctuary collapsed. (Plf. SUMF ¶ 9.) The same day, Trustee Carlton Wicker contacted Church Mutual regarding the ceiling failure. (Plf. SUMF ¶ 10.) Church Mutual advised him that the Policy had been cancelled in December 2012. (Plf. SUMF ¶ 11.) Several days later, Deacon Barry Taylor sent a letter on behalf of Pleasant Green to Church Mutual regarding the "unjustifiable cancellation" of the Policy, and requesting that the Policy be reinstated. (Plf. Ex. 10.) The letter explained that the "church trustee board was unaware of the cancellation" due to reasons that were "being addressed internally," and that there had been confusion regarding the payment plan. *Id.* Church Mutual denied Mr. Taylor's request for reinstatement; however, it thereafter issued Pleasant Green a new policy that excluded coverage of the damage to the sanctuary. (Plf. SUMF ¶ 16, Plf. Ex. 1.) On August 7, 2013, Pleasant Green filed a Complaint with the Department of Insurance, alleging that the Policy was "unjustifiably canceled." (Plf. SUMF ¶ 21; Plf. Ex. 16.) The Department of Insurance ultimately concluded that it could find no wrongdoing by Church Mutual and that it had no basis to continue its investigation. (Plf. SUMF ¶ 23, Plf. Ex. 18.)

On November 20, 2013, Pleasant Green filed a claim with Church Mutual, alleging an April 2012 hailstorm as the cause of loss in connection with the ceiling collapse. (Plf. SUMF ¶¶ 26, 36.) The same day, Church Mutual hired an adjuster to inspect the Building. The adjuster inspected the Building on December 9, 2013 and recommended that Church Mutual hire an engineer to fully inspect the roof and further investigate the claim. (Plf. SUMF ¶¶ 28, 34, 35; Plf. Exs. 26, 27.) Church Mutual thereafter hired an engineer, but due to weather-related delays he was unable to inspect the Building until February 18, 2014. In a report issued on April 24, 2014, the engineer noted hail damage to shingles on parts of the roof, which according to weather data could have occurred on, among other dates, April 28, 2012. He concluded, however, that "[d]ue to the removal of the ceiling prior to the site visit, no conclusion can be made regarding the cause of the ceiling collapse"; and that "[t]he interior moisture intrusion…is the result of long-term ongoing deterioration and is unrelated to wind or hail." (Plf. Ex. 35.)

Meanwhile, on February 6, 2014, Church Mutual sent Pleasant Green a reservation of rights letter, and in March 2014 Mr. Taylor signed a proof of loss claiming "[n]o less than: $2,059,916." Church Mutual thereafter requested that Pleasant Green submit to an Examination Under Oath (hereinafter, the "Examination"). (Plf. SUMF ¶¶ 48-50, Plf. Exs. 21, 32.) Prior to the Examination, Pleasant Green produced to Church Mutual two engineering reports that addressed the ceiling collapse: one report, dated June 14, 2013, was issued by J. Lu International, LLC (hereinafter, the "J. Lu Report"), and the other report, dated December 9, 2013, was issued by Unified Investigations & Sciences, Inc. (hereinafter, the "UIS Report").

The J. Lu Report concluded that:

1) The original construction of ceiling framing is not adequate and lack[s] positive mechanical suspension from solid structure above.

4

2) During many years [of] temperature and moisture changes, the grip between the nail and wood joist got loose and eventually the plaster fell off and collapsed due to its own weight.
3) Moisture from condensation in attic space and past roof leakage caused moisture and water damage to wood ceiling framing members and increase in weight of plaster…

(Plf. Ex. 41.) The UIS Report noted evidence of hail damage that had diminished the roof's functional life and water-shedding capability, but concluded that:

> None of the moisture staining found on the walls and ceilings in the buildings resulted from hail compromising the roof coverings or from a recent, single storm event causing breeches in the roof coverings…
>
> The collapse of the auditorium ceiling was the result of age-related deterioration of the ceiling, which included the nails attaching the ceiling to the joists slipping out of the joists over time…
>
> Elevated levels of moisture in the attic space above the auditorium ceiling due to inadequate ventilation could not be ruled out as a cause of the ceiling collapse…

(Plf. Ex. 40.)

During the Examination, which took place on April 21, 2014, Mr. Taylor confirmed that Pleasant Green had received the December 2012 Notice of Cancellation, but that its staff had "mishandled" the Notice. (Plf. SUMF ¶ 8, Plf. Ex. 1 at 4-5.) He also confirmed that Pleasant Green had relied upon the J. Lu and UIS Reports in determining the cause of loss, and that the UIS Report was the only engineering analysis Pleasant Green had to support is claim that hail had caused the ceiling failure. (Plf. Ex. 1 at 14, 41-43.) Mr. Taylor explained that Pleasant Green attributed the cause of loss to the April 2012 storm because it had "discover[ed] shortly thereafter a crack in one of the window alcoves," which "started as a hairline" and eventually expanded to the area that collapsed. *Id.* at 31-32. According to Mr. Taylor, Pleasant Green "didn't originally connect [the crack] with the hail," and it did not report the crack to Church Mutual. *Id.* at 32-33, 43-44.

5

On August 20, 2014, Church Mutual filed this action for declaratory judgment, seeking a determination of the Parties' rights and obligations under the Policy. (ECF No. 1.) Pleasant Green thereafter filed a Counterclaim, asserting claims for breach of contract and vexatious refusal to pay. (ECF No. 19.) The Parties now move for summary judgment. (ECF No. 55, 58.) They also move to strike the reports and testimony of several experts. (ECF No. 53, 61, 63.)

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Where Parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 947 (E.D. Mo. 2014). The substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing the absence of a genuine issue of material fact. *See id.* at 256. When a summary judgment motion is properly supported by evidence, the burden then shifts to the non-moving party who must set forth affirmative evidence showing that there is a genuine issue for trial. *See id.* at 256-57. In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences that may be drawn from the record. *See Hott v. Hennepin Cnty., Minn.*, 260 F.3d 901, 904-05 (8th Cir. 2001) (citations omitted).

## DISCUSSION

As an initial matter, Pleasant Green argues that it had reasonable expectations of coverage in April 2013 which should be honored, and that, in the alternative, the Policy should be reformed. For the following reasons, this Court disagrees with Pleasant Green's allegations that it "had no reason to doubt" that it was insured at the time the ceiling collapsed.

On December 6, 2012, Church Mutual sent Pleasant Green a Notice of Cancellation. During the Examination, Mr. Taylor acknowledged that Pleasant Green had received this Notice, and explained that Pleasant Green's staff had mishandled it:

> [T]he cancellation notice, we don't know how it was mishandled but we have two clerks and somehow it was—we know they were date-stamped but they did not come to my attention or Carlton's attention until the following week. We just were not aware that we were in cancellation and our financial clerk, again, assumed we would be getting another statement in February for another quarter, quarterly payment.
> …
> Now, we have, unfortunately—well, we have a financial clerk who handles all invoice payments as well as tracking of our revenues and expenses. We have another clerk who does nothing related to finances but she does handle mail, okay. And our theory is that she somehow time-stamped the document, the financial clerk did not see it, it was—maybe it was put in the wrong mail tray or something but neither Carlton nor I were aware of the cancellation, again, until April.

(Plf. Ex. 1 at 4, 7.) On December 27, 2012, Church Mutual sent Pleasant Green a final billing statement for the earned premium, which indicated that the "Policy Period" had run from "09/17/12-12/21/12," and that the Policy was "[c]ancelled." Church Mutual subsequently confirmed in the January 29, 2013 letter that "[t]he coverage on this policy has ceased." Although Pleasant Green contends that there was confusion regarding the payment plan, the Court notes that there is no evidence suggesting that Pleasant Green ever contacted Church Mutual when it did not receive a statement in February 2013 as expected. In addition, Pleasant Green does not dispute that it received the January 29, 2013 letter confirming cancellation of the

Policy.  While Pleasant Green's mishandling of its correspondences and its purported misunderstanding of its payment obligations present unfortunate circumstances, they do not provide grounds for application of the reasonable expectations doctrine or for reformation. *See Nabil v. State Farm Mut. Auto. Ins. Co.*, 877 S.W.2d 177, 178 (Mo. Ct. App. 1994) ("The principal of reasonable expectations provides that the "objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."); *Kopff v. Economy Radiator Serv.*, 838 S.W.2d 449, 452 (Mo. Ct. App. 1992) (party seeking reformation must show that written contract does not accurately set forth terms of agreement actually made, or does not incorporate true prior intentions of parties; unilateral mistake alone is not adequate basis for reformation). Therefore, the Court concludes that in April 2013 the Policy was no longer in effect, and that in order to succeed on its claim for breach of contract Pleasant Green must show that the cause of loss occurred prior to December 22, 2012, and that there was coverage pursuant to the terms of the Policy.

Church Mutual disputes the cause and extent of loss alleged by Pleasant Green. Church Mutual further asserts that the Policy is void because Pleasant Green failed to cooperate in its investigation of the claim and made numerous misrepresentations relating to the loss. Specifically, Church Mutual contends that Pleasant Green, among other things, failed to give prompt notice of the loss and to take reasonable steps to protect the property from further damage. (ECF No. 57.) Pleasant Green counters that Church Mutual has failed to establish that it intentionally concealed and misrepresented material facts relating to the claim, and it seeks partial summary judgment with respect to Church Mutual's "fraud and misrepresentation defense." (ECF No. 59.)

Upon consideration of the Parties' arguments and the record before it, the Court concludes that the Policy is void. Even assuming that the April 2012 hailstorm did in fact cause the loss, the Court finds that it is beyond genuine dispute that Pleasant Green failed to give Church Mutual prompt notice of the loss and to take reasonable steps to protect the property from further damage.

Here, the Policy states that, "in event of loss or damage," the insured must give Church Mutual "prompt notice of the loss or damage" and "take all reasonable steps to protect the Covered Property from further damage…" (Plf. Ex. 2.)

"Conditions of an insurance policy which require that the insured give notice of a loss to the insurer within a certain time are valid and enforceable." *East Attucks Cmty. Housing, Inc. v. Old Republic Sur. Co.*, 114 S.W.3d 311, 326 (Mo. Ct. App. 2003) (citing *Johnston v. Sweany*, 68 S.W.3d 398, 401 (Mo. 2002) (en banc)). "However, the insured will not be barred from recovering under a policy based on the breach of such a condition, unless the insurer can demonstrate that it has been prejudiced by such breach." *Id.* "Generally, when a policy does not specify a time period within which the insured is to give notice to the insurer, notice is to be given within a reasonable time." *Travers v. Universal Fire & Cas. Ins. Co*., 34 S.W.3d 156, 165 (Mo. Ct. App. 2000) (citations omitted). The question of whether notice of loss was given within a reasonable time is usually a question for the jury, however, "where all reasonable persons would conclude that notice or proof was not given or made within [a reasonable] time, under all the circumstances, then it becomes a question of law for the court." *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 14 (Mo. 1995) (en banc) (quotations and citation omitted); *see also Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1029 (8th Cir. 2003)

("Although a question of fact, the issue of prejudice may become a question of law if all reasonable persons would conclude the insured did not provide notice in a reasonable time.").

Church Mutual asserts that it was "prejudiced by not being notified of the crack and damages when they developed," and that if it had received timely notice "it would have had the opportunity to inspect the property and make any repairs that were needed to prevent further spreading and damage." Pleasant Green counters that its failure to give timely notice should be excused because it was "impossible" for Pleasant Green to alert Church Mutual of a claim when it did not learn of one until April 2013. The record, however, refutes Pleasant Green's allegations that it was not aware of a claim.

Pleasant Green's admissions regarding the ceiling crack that existed in April 2012 demonstrate that Pleasant Green was aware of damage that needed to be addressed. During the Examination, Mr. Taylor testified that shortly after the April 2012 storm Pleasant Green discovered a crack in one of the window alcoves which worsened over time, and that the crack was Pleasant Green's "first inclination that something was going on…" (Plf. Ex. 1 at 30-31, 34.) As to why Pleasant Green did not notify Church Mutual until over a year after it noticed the ceiling crack, Mr. Taylor testified as follows:

> We didn't know whether the crack was related to some settlement. We had no idea. Our intent was to get a structural engineer up there to try to determine the cause of the crack.
> …
> We didn't before the failure and so we were thinking we had to get to that from the exterior but as it turns out we would have had to remove a larger area of the plaster before a structural engineer could make any type of forensic analysis to determine what was going on there. And it was kind of difficult to do that. We were worshiping in there, you know. We didn't know that the area was subject to fall but we knew something was going to have to be done. And, in fact, our intent was last April, as soon as it stopped raining because we thought again we had to access that from the exterior, move some roofing and actually go down through the deck to determine what was going on, which is major work as you might appreciate.

> …
> Before we could do that, the ceiling collapsed. Matter of fact, the very week I instructed some of our trustees as soon as the rain stops we got to get a structural engineer up there and before that week was out that area of the ceiling collapsed.
> …
> [W]e were looking at the cost to us and, unfortunately, we've been—we've had a very tight budget in recent years and we were looking at the cost to use to determine probable cause even before we could submit a claim, okay. We knew that the ceiling had to be opened up or the plumbing had to be, the roof had to be opened up. Something had to be done that was going to be cost inconvenience [sic], possibly some partial temporary displacement. That's what we were looking at and so we weren't quick to do that, okay. We were forced to do that, however, after the collapse, okay.

*Id.* at 37-38, 44-47. Mr. Taylor also conceded, in effect, that Church Mutual was prejudiced by the lack of timely notice:

> Q. Can you see how that could prejudice their position if they understood that you have some loss [in April 2012] and they're brought out there at that time to look at it and assess it, maybe something could have been done so a year didn't go by to where it progressed to cause the other damage? You understand they weren't given that opportunity?
> A. Well, I can see how we were negligent or remiss in not getting them out when we first noticed the crack, that's what I can see.
> Q. Okay.
> A. We should have done that, I agree. We didn't…
> Q. And a year went by and a lot of stuff could occur. Now, you appreciate that, don't you?
> A. Exactly…

*Id.* at 44-45.

In view of Pleasant Green's concessions, the Court concludes that Pleasant Green breached its duties under the Policy. Pleasant Green "saw a problem" and "realized something had to be done," but it neither provided prompt notice of the ceiling crack to Church Mutual nor took reasonable steps in an effort to prevent further damage. *Id.* at 46. Therefore, the Court concludes that the Policy is void.

Pleasant Green further counters that Church Mutual is estopped from asserting or has waived its Policy defenses, because its contention that the Policy was cancelled in December

11

2012 is inconsistent with its acceptance and investigation of Pleasant Green's claim in November 2013. Similarly, Pleasant Green asserts that the reservation of rights letter was not timely sent.

The Court disagrees with Pleasant Green's construction of the facts. Church Mutual's investigation of Pleasant Green's November 2013 claim was not prompted by a change in Church Mutual's stance on the December 2012 cancellation of the Policy; rather, Church Mutual investigated the claim because Pleasant Green had newly identified an April 2012 storm as the cause of loss. In addition, Church Mutual sent the reservation of rights letter approximately five weeks after its adjuster had issued a report recommending that an engineer inspect the roof. At that time, Church Mutual's engineer had been unable to inspect the Building due to weather-related delays; the Examination, which revealed information about the underlying ceiling crack that developed shortly after the April 2012 storm, had not taken place; and Pleasant Green had not submitted its proof of loss. Thus, Church Mutual had not yet completed its investigation of the facts underlying Pleasant Green's claim. Therefore, the Court finds that it is beyond genuine dispute that the letter was timely sent. *See Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 765 (Mo. 2009) (en banc); *see also City of Carter Lake v. Aetna Cas & Sur. Co*, 604 F.2d 1052, 1060 (8th Cir. 1979).[1]

For the foregoing reasons, the Court concludes that the Policy is void, and that Pleasant Green's claim for breach of contract fails. In view of this conclusion, the Court declines to address the Parties' arguments regarding whether or not the record supports the cause and extent of loss alleged by Pleasant Green in its claim with Church Mutual.

Finally, the Court concludes that, because Pleasant Green's claim for breach of contract fails, its claim for vexatious refusal to pay must also fail. *See Macheca Transp. v. Phila. Indem.*

---

[1] The Court further notes that Pleasant Green did not plead either estoppel or waiver as affirmative defenses in its Amended Answer.

*Ins. Co.*, 649 F.3d 661, 674 (8th Cir. 2011) (to establish claim for vexatious refusal to pay, insured must prove: (1) it had insurance policy with insurer; (2) insurer refused to pay; (3) insurer's refusal to pay was without reasonable cause or excuse) (citing *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006) (en banc)).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Church Mutual Insurance Company's Motion for Summary Judgment (ECF No. 55) is **GRANTED**.

**IT IS FURTHER ORDERED** that Pleasant Green Missionary Baptist Church's Motion for Partial Summary Judgment (ECF No. 58) is **DENIED**.

**IT IS FURTHER ORDERED** that the Parties' Motions to Strike (ECF Nos. 53, 61, 63) are **DENIED as moot**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 18th day of August, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE